1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
9                              AT TACOMA

10   THEODORE T. AIKEN,
                                              CASE NO.    C07-5291RBL-KLS
11                    Plaintiff,
                                              REPORT AND
12          v.                                RECOMMENDATION

13   MICHAEL J. ASTRUE, Commissioner of       Noted for October 31, 2008
     Social Security,
14
                      Defendant.
15

16

17          Plaintiff, Theodore T. Aiken, has brought this matter for judicial review of the denial of his

18   applications for disability insurance and supplemental security income ("SSI") benefits.  This matter has

19   been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule

20   MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After

21   reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and

22   Recommendation for the Honorable Ronald B. Leighton's review.

23                        FACTUAL AND PROCEDURAL HISTORY

24          Plaintiff currently is 55 years old.[1] Tr. 40.  He has a tenth grade education and past work

25   experience as a maintenance worker. Tr. 20, 77, 272.

26          On June 10, 2004, plaintiff filed applications for disability insurance and SSI benefits, alleging

27   _____

28          [1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to
     Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

disability as of April 15, 2001, due to neck pain, pain, diabetes, high blood pressure, back problems, and difficulty with memory and concentration. Tr. 12, 56, 64, 66. His applications were denied initially and on reconsideration. Tr. 40-42, 47, 52. A hearing was held before an administrative law judge ("ALJ") on January 10, 2007, at which plaintiff, represented by counsel, appeared and testified, as did plaintiff's wife and a vocational expert. Tr. 268-310.

On January 26, 2007, the ALJ issued a decision, determining plaintiff to be not disabled, finding specifically in relevant part:

(1)    at step one of the sequential disability evaluation process,[2] plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;

(2)    at step two, plaintiff had impairments consisting of degenerative disc disease of the cervical spine, status post surgery, diabetes mellitus and right arm tremor, which in combination were "severe";

(3)    at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(4)    at step four, plaintiff had the residual functional capacity to perform a modified range of light work, with additional non-exertional limitations, which precluded him from performing his past relevant work; and

(5)    at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 12-21. Plaintiff's request for review was denied by the Appeals Council on April 14, 2007, making the ALJ's decision the Commissioner's final decision. Tr. 4; 20 C.F.R. § 404.981, § 416.1481.

On June 8, 2007, plaintiff filed a complaint in this Court seeking review of the ALJ's decision. (Dkt. #1-#3, #6-#8). The administrative record was filed with the Court on February 5, 2008. (Dkt. #20). Plaintiff argues the ALJ's decision should be reversed and remanded to the Commissioner for an award of benefits or, in the alternative, for further administrative proceedings for the following reasons:

(a)    the ALJ erred in evaluating the medical evidence in the record;

(b)    the ALJ erred in not finding plaintiff's chronic pain syndrome, hepatitis C, depression, and anxiety to be severe impairments;

(c)    the ALJ erred in finding that plaintiff's impairments, both individually and in combination, did not meet or equal the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.04, 12.04 or 12.06, and erred in not finding his chronic pain

---

[2]The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step, the disability determination is made at that step, and the sequential evaluation process ends. Id.

syndrome or pain disorder equated with a psychiatric disorder;

(d)    the ALJ erred in assessing plaintiff's credibility;

(e)    the ALJ erred in assessing plaintiff's residual functional capacity; and

(f)    the ALJ erred in relying on an incomplete and inaccurate hypothetical at step five of the sequential disability evaluation process.

For the reasons set forth below, the undersigned does not agree that the ALJ erred in determining plaintiff to be not disabled, and therefore recommends that the ALJ's decision be affirmed.

## DISCUSSION

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.    The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A.    Dr. Richardson

In late May and early June 2003, plaintiff underwent a psychological evaluation conducted by Rory F. Richardson, Ph.D., who diagnosed him with a "Pain Disorder with Both Psychological Factors, as well as General Medical Condition (multiple issues relating to the cervical spine area)," an anxiety disorder and a history of post traumatic stress disorder related to a industrial accident which occurred in 2001. Tr. 155-56. Dr. Richardson concluded in relevant part that:

> . . . The pain caused by the medical condition is likely to cause any psychological stressors and anxiety to become significantly worse, and as a result increase musculature tension and reduce resistence to pain. He was able to work and function prior to the accident, however, since the accident it would appear that the physiological

problems have caused a deterioration in his ability to function and the increase in emotional stress. There is a pre-existing posttraumatic stress condition that did not appear to interfere with his ability to maintain employment. It is likely that his ability to work and focus his energies on productive tasks actually had helped him cope with the posttraumatic stress and anxiety condition. With the inability to continue to perform work activities it is likely that the anxiety components of the posttraumatic stress increased from their previous state. . . . There also appears to be a level of pain that would at least significantly be accounted for by the combination of nerve impingement herniation and degenerative disk disease. The impact of the pre-existing posttraumatic stress as well as the stress of the situation would most likely make the condition worse. The posttraumatic stress elements are likely to have been made worse by the elimination of ability to work. There does not appear to be any intention to produce or falsify the level of pain as evidenced by his attempt to continue to work despite the injury. . . . The medical condition has lasted more than 6 months and appears to be of a chronic nature. The pain perception has also lasted more than 6 months. The injury that occurred appears most likely, based on the review of records, to be the cause of the acute deterioration which resulted in the current level of deterioration. This condition may have existed, however, he was able to work despite these conditions and there does not appear to be any indications that his work was significantly impacted by previous medical or psychological conditions. The anxiety condition that he has is most likely made worse because of the inability to maintain his ongoing employment which distracted him from rumination. It would also appear that the psychological factors relating to posttraumatic stress substantially reduced and that the posttraumatic stress in and of itself was not directly responsible for the accident, nor was it caused by the accident. . . . The chronic pain issues appears [sic] to be of chronic nature and unlikely to resolve itself. In order for some of the psychological factors to be reduced the physical pain would have to be reduced.

Tr. 156.

The ALJ addressed Dr. Richardson's findings as follows:

. . . After performing a psychological evaluation of the claimant in June 2003, Rory F. Richardson, Ph.D., reported diagnoses including a pain disorder with both psychological factors and a general medical condition, an anxiety disorder, not otherwise specified, and a history of post traumatic stress disorder related to his accident (Exhibit 3F/3). He reported the claimant's symptoms of anxiety are exacerbated by his inability to perform work activity which serves to distract him from rumination. This suggests his anxiety symptoms would likely be reduced if he were able to return to work. His symptoms have been treated with Wellbutrin and Prozac.

Tr. 15. Plaintiff argues the ALJ misinterpreted Dr. Richardson's findings. Specifically, rather than having concluded that his anxiety was exacerbated by his inability to perform work, plaintiff asserts that what Dr. Richardson actually was reporting was that the loss of the ability to work exacerbated his psychological condition. But there is no real difference in meaning here. If, as plaintiff is arguing and appears to be the case, Dr. Robinson was stating that plaintiff's symptoms were made worse by his inability to maintain employment, then clearly it is reasonable to assume the return of that ability would mitigate or reduce the severity of those symptoms.

Plaintiff further argues that it is evident from Dr. Robinson's conclusions that he acknowledged the

interplay of his mental and physical conditions, including his chronic pain, and that plaintiff's chronic pain impeded his return to work, which, in turn, caused a worsening of his mental condition. The undersigned does agree that Dr. Robinson felt plaintiff's mental and physical conditions impacted each other, and that, as discussed above, the inability to work worsened his anxiety. The undersigned disagrees, however, that Dr. Robinson in fact found plaintiff's "chronic pain issues" were impeding his return to work. Nowhere in Dr. Robinson's remarks did he actually opine as to plaintiff's vocational capabilities. Rather, the gist of Dr. Robinson's opinion appears to be merely be that plaintiff's pain and inability to continue working have exacerbated his psychological symptoms. This alone, though, does not amount to a finding that plaintiff is being prevented from working due to his physical and/or mental conditions.

B.   Dr. Proano

Fernando D. Proano, M.D., a treating physician, examined plaintiff in mid-June 2005, diagnosing him with cervical disc disease, a history of cervical pain, chronic pain and myofascial pain associated with a cervical strain, both post cervical laminectomy, right cervical radiculopathy, and cervical strain. Tr. 234. Dr. Proano opined that plaintiff appeared to be "medically stationary, fixed and stable," and that his work capacity appeared to be "consistent with sedentary and possibly light work." Id. Following an examination in early September 2005, however, Dr. Proano opined that plaintiff was "not capable of performing full-time sedentary work or greater." Tr. 266. With respect to this latter opinion regarding plaintiff's ability to work, the ALJ found as follows:

> I have also considered and given little weight to the September 6, 2005, opinion of treating physician Fernando D. Proano, M.D., that the claimant was "not capable of performing full-time sedentary work or greater" (Exhibit 9F/36). Dr. Proano's opinion appears to be based primarily on the claimant's subjective reports of pain as he had earlier opined in August 2005, "some employment options may be available to him" if treatment was successful in reducing his pain (Exhibit 9F/2). However, for all the reasons stated above, I have found the claimant's subjective complaints regarding the severity of his pain not fully credible. In addition, Dr. Proano's September 2005 report is inconsistent with his opinion after his initial physical examination of the claimant performed in June 2005, that the claimant's work capacity "appears to be consistent with sedentary to possibly light work category" (Exhibit 9F/5). Subsequent treatment records reveal that, although Dr. Proano has consistently reported objective findings of reduced range of motion of the cervical spine, he has rarely completed a full physical examination of the claimant since that time and has reported no additional findings which would support a decrease in the claimant's functioning since June 2005 (Exhibit 9F).

Tr. 19.

Plaintiff argues the ALJ erred in rejecting Dr. Proano's most recent opinion regarding his ability to

work by relying on Dr. Proano's statement in mid-August 2005, that plaintiff was "not employed at this time but some employment options may be available to him if the treatment is successful in reducing pain." Tr. 231. Rather, plaintiff asserts, Dr. Proano merely was opining that return to work was feasible only if that treatment succeeded. But the ALJ did not reject Dr. Proano's opinion on this basis. Indeed, the ALJ referred to that statement by Dr. Proano as evidence that he appeared to have relied primarily on plaintiff's subjective complaints in concluding he could not work in early September 2006. Further, as discussed in further detail below, the medical evidence in the record shows plaintiff's medication regimen was to a fairly significant extent successful in reducing his pain. Plaintiff's argument that this was not a valid basis for rejecting that conclusion thus is without merit.

In addition, contrary to plaintiff's assertions, and also as discussed in greater detail below, the ALJ did not err in discounting his credibility. A physician's opinion premised on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility. Tonapetyan, 242 F.3d at 1149; see also Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of his or her symptoms and limitations may be disregarded where those complaints have been properly discounted). Further, as noted by the ALJ, Dr. Proano's treatment notes are devoid of objective medical evidence supportive of the decrease in plaintiff's functioning Dr. Proano found since he initially examined plaintiff in mid-June 2005. See Tr. 230-34, 266; Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between  medical opinion source's functional assessment and that source's clinical notes, recorded observations and other comments regarding claimants capabilities is clear and convincing reason for not relying on that assessment); see also Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989); Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if that opinion is inadequately supported by clinical findings).

C.    Dr. Fox

In late July 2004, Richard Fox, M.D., completed a form for the Oregon State Department of Human Services, in which he opined that plaintiff was capable of lifting ten pounds occasionally and one to five pounds frequently, sitting for four hours in an eight-hour day, and walking/standing for four hours in an eight-hour day, and that no hand-held assistive device was medically necessary. Tr. 157. Dr. Fox stated that the above restrictions were based on both plaintiff's subjective complaints and objective findings, the

latter of which consisted of "restricted range of motion" in his "head/neck" and "painful muscle spasms" in his "posterior cervical muscles." Id. In terms of pain and fatigue, Dr. Fox stated that it was "constant and frustrating," "aggravated by activity," required medication, and "resulted in depression and anxiety." Id. Dr. Fox further stated that plaintiff's restrictions first began on January 28, 2001, and he expected them to continue indefinitely and that they were "probably permanent." Id.

The ALJ provided the following analysis of Dr. Fox's findings:

> I have considered and given little weight to the July 23, 2004, opinion of Richard Fox, M.D., that the claimant's impairments and associated pain prevent him from lifting more than five pounds frequently and 10 pounds occasionally, standing and/or walking more than four hours of an eight-hour workday, and sitting more than four hours of an eight-hour workday (Exhibit 4F). Dr. Fox's opinion is inconsistent with the results of a physical capacities evaluation performed in August 2004 which indicated the claimant could perform exertional activity in the light to medium category with lifting up to 30 pounds (Exhibit 5F/6). While Dr. Fox reported that his opinion was based on objective findings in addition to the claimant's subjective complaints, the only objective findings he reported were restricted range of motion of the head and neck and muscle spasms in the cervical muscles. Dr. Fox's opinion is inconsistent with the claimant's June 2004 report in which he acknowledged an ability to lift 20 pounds (Exhibit 1E/2). It is also inconsistent with his June 29, 2004, report that he believed he could work at a job which allowed him to alternate sitting, standing, and walking as needed, with no lifting over 10 to 15 pounds (Exhibit 5F/38).

Tr. 19. Plaintiff argues the inconsistency between the August 2004 physical capacities evaluation and Dr. Fox's findings is not a valid basis on which the ALJ based his rejection of those findings. This is because, plaintiff asserts, his condition is a waxing and waning one, with respect to which good days and bad days are expected, and thus he could have better and worse days of performance on physical capacities evaluations. Plaintiff's description of his condition, however, is wholly his own. No treating or examining physician, or any other medical source in the record for that matter, has described or diagnosed it as such. Indeed, there is no indication in either the form Dr. Fox completed or the August 2004 physical capacities evaluation report that plaintiff was feeling particularly worse on the day Dr. Fox evaluated him. The undersigned thus rejects plaintiff's reasoning here.

In addition, as noted by the ALJ, the form Dr. Fox completed contained very little in the way of objective clinical findings to support his assessment of plaintiff's functional capacity, consisting only of restricted range of motion of the head and neck and spasms in the cervical muscles. See Batson, 359 F.3d at 1195 (ALJ need not accept medical opinion if it is inadequately supported by clinical findings). Plaintiff asserts Dr. Fox noted other important information, including his belief that the limitations he

found were indefinite and probably permanent, and his statement that plaintiff's pain/fatigue was constant, frustrating, and aggravated by activity, and resulted in depression and anxiety. However, the latter findings clearly are based primarily on plaintiff's own subjective complaints, which, as noted above and discussed in further detail below, the ALJ properly discredited. Dr. Fox's belief, furthermore, is merely a conclusion the ALJ properly discounted due to the lack of objective medical support therefor.

Plaintiff argues Dr. Fox's findings are consistent with the opinions of other treating physicians in the record, as well as his own subjective complaints and the reports of others. But plaintiff fails to point out with any specificity where such consistency lies. Indeed, with the exception of those of Dr. Proano – which, as discussed above, the ALJ properly discredited – no other medical opinion source in the record has produced findings indicating as restrictive a physical functional capacity assessment as that opined by Dr. Fox. See, e.g., Tr. 127, 133-34, 158, 163, 167, 219, 234, 266. Once more, as discussed above, the ALJ properly discounted plaintiff's credibility, and thus, to the extent his symptom complaints were consistent with the findings of Dr. Fox, that consistency does not render less valid the ALJ's analysis here. Even if plaintiff's own self-reports were to be credited, furthermore, as noted by the ALJ, plaintiff himself reported that he could lift, sit, stand and walk at greater levels than found by Dr. Fox.

II.     The ALJ's Step Two Findings

At step two of the sequential disability evaluation process, the ALJ must determine if an impairment is "severe." Id. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b), § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that his "impairments or their symptoms affect her[his] ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a de minimis screening device

1   used to dispose of groundless claims. Smolen, 80 F.3d at 1290.

2       As noted above, the ALJ found plaintiff had impairments consisting of degenerative disc disease of
3   the cervical spine, status post surgery, diabetes mellitus, and right arm tremor, which in combination were
4   severe. Plaintiff asserts, without setting forth any specific argument, that the ALJ erred in not finding his
5   chronic pain syndrome, hepatitis C, depression and anxiety to be severe as well. The undersigned finds no
6   error here on the part of the ALJ.

7       First, no medical source in the record actually has diagnosed plaintiff as having what plaintiff terms
8   a chronic pain syndrome. Dr. Richardson did diagnose plaintiff with a "[p]ain disorder," but, as discussed
9   above, failed to note any specific work-related limitations stemming therefrom. Tr. 156. The same is true
10  with respect to the findings of E. Ray Tatyrek, Ph.D., in late June 2004. Tr. 192. David A. Murphy, M.D.,
11  diagnosed plaintiff with both a "pain disorder, cervical strain, nerve impingement" and "[c]hronic neck
12  pain with upper extremity symptoms" in late August 2004, and found him to be capable of performing
13  medium to light work (Tr. 162-63), but the ALJ arguably adequately accounted for any limitations due to
14  plaintiff's neck and/or back pain by finding his degenerative disc disease to be a severe impairment. A
15  pain disorder was found by two other non-examining, consulting psychologists as well, but they found at
16  most only mild mental functional limitations had resulted therefrom. Tr. 203-04, 213.

17      Other physicians and medical sources too have diagnosed plaintiff with pain related to his neck
18  and/or back problems, but not specifically to a chronic pain syndrome. Tr. 122, 126, 143, 145, 151, 185,
19  227, 232, 234, 258, 265, 266A-267. To the extent the ALJ did err in not finding plaintiff to have a severe
20  chronic pain disorder, furthermore, the undersigned finds any such error to be harmless. See Batson v.
21  Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying
22  harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding ALJ committed
23  harmless error). An error will be deemed harmless only if it is "inconsequential" to the ALJ's "ultimate
24  nondisability determination." Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th
25  Cir. 2006) . Such is the case here, since, as discussed above, the ALJ did find plaintiff to have a severe
26  impairment related to his neck and/or back pain , and, which, as discussed below, resulted in limitations in
27  his ability to perform work-related activities.

28      In regard to plaintiff's hepatitis C, the ALJ found as follows:

The claimant tested positive for the hepatitis C antibody in October 2005 (Exhibit 9F/10) for which he underwent treatment with interferon for six months. However, I find this represents a non-severe impairment. While medical records reveal the claimant experienced some fatigue associated with treatment, he completed interferon treatment in September 2006. Subsequent medical records have included no evidence of abnormal liver functioning, end-stage organ damage, or that his hepatitis C positive status results in any significant limitation in his physical functioning.

Tr. 15. Plaintiff presents no specific challenge to these findings, and the undersigned finds the substantial evidence in the record supports them as well. Accordingly, the ALJ also did not err here.

Plaintiff has been diagnosed with depression, but no medical source has attributed any work-related limitations to that condition. Tr. 157, 165, 191-92, 243-46, 248, 250-52. As such, the ALJ properly did not find it to be a severe impairment. Tr. 15. Plaintiff also has been diagnosed with anxiety. Tr. 156-57, 191-92, 203, 208. But one examining physician who made that diagnosis did not relate it to any functional limitations, and two non-examining, consulting physicians who also diagnosed plaintiff with it found it had caused only mild limitations in his mental functioning. Tr. 192, 213. Dr. Fox opined that plaintiff's fatigue had resulted in anxiety as well, but he too did not opine as to any specific restrictions on his ability to work resulting therefrom. Tr. 157. Finally, as discussed above, although Dr. Richardson diagnosed plaintiff with anxiety, he concluded that it likely had been made worse by is inability to work, as opposed to the demands of work having an adverse impact on his anxiety and consequent mental functioning. Tr. 156.

III.     The ALJ's Step Three Findings

At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). 20 C.F.R § 404.1520(d), § 416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). If any of the claimant's impairments meet or equal a listed impairment, he or she is deemed disabled. Id. The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. Tacket, 180 F.3d at 1098. However, "[a] generalized assertion of functional problems is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R. § 404.1526).

A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."

20 C.F.R. § 404.1508, § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also SSR 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment.") (emphasis in original). However, "symptoms alone" will not justify a finding of equivalence. Id. The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

The ALJ found none of plaintiff's impairments met or equaled the criteria of any of those contained in the Listings, including those set forth 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.00 and 12.00. Tr. 16. Plaintiff argues the ALJ erred in not finding his impairments met or equaled Listing 1.04 (disorders of the spine), 12.04 (affective disorders) and 12.06 (anxiety-related disorders), both individually and in combination. Plaintiff further asserts the ALJ erred in not finding his chronic pain syndrome or pain

disorder equated to the requirements of a psychiatric disorder. The undersigned disagrees.

A.    Listing 1.04

Listing 1.04 provides as follows:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. The record shows plaintiff had degenerative disc disease, and which meets the first requirement for Listing 1.04, a disorder of the spine. There also appears to be at least some evidence of nerve root compromise. See, e.g., 122, 126, 151, 162, 185, 232, 234. However, there is no medical evidence in the record that plaintiff has spinal arachnoiditis as required by Listing 1.04B or lumbar spinal stenosis resulting in an inability to ambulate as required by Listing 1.04C. As for Listing 1.04A, evidence of both motor loss (i.e., muscle weakness or atrophy associated therewith) and sensory or reflex loss, in addition to limitation of motion of the spine, is required. The record, however, is essentially devoid of such evidence. See Tr. 122, 126, 144-45, 162, 184, 234, 252, 256, 262, 266.

The ALJ thus properly did not find plaintiff's physical impairments met the criteria of Listing 1.04. Nor are there medical findings in the record indicating those impairments are at least equivalent in severity to the set of medical findings contained Listing 1.04. Plaintiff points to his own reports and testimony that describe debilitating pain and other related symptoms. However, as noted above, symptoms alone will not justify a finding of equivalence. In addition, the determination that is conducted at step three must be made on the basis of medical factors alone. See SSR 96-8p, 1996 WL 374184 *2; see also Tackett, 180

F.3d at 1100 ("Medical equivalence must be based on medical findings.") (quoting 20 C.F.R. § 404.1526).

B.    Listing 12.04

Listing 12.04 reads:

12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.04.

The medical evidence in the record fails to support a finding of listing-level severity here. Indeed, as discussed above, the ALJ did not err in finding plaintiff's depression to be not severe. First, there is not even sufficient evidence in the record to indicate plaintiff has met part A of Listing 12.04. Clearly, he does not have a manic syndrome. To the extent plaintiff does suffer from depression, furthermore, the record is devoid of medical evidence establishing any of the above symptoms characterized thereby. Plaintiff points to Dr. Richardson's notation that he had "some major change in mood of continuous variation, which could be related, at least in part to" his chronic pain and sleep deprivation issues. Tr. 155. Dr. Richardson though was merely relating what plaintiff reported to him, and, in any event, did not diagnose him with depression, but rather with a pain disorder and an anxiety disorder. Indeed, Dr. Richardson stated that testing indicated only "mild indicators of depression." Id.

The only other evidence plaintiff points to in support of his argument that he meets the criteria of Listing 12.04A, or Listing 12.04B and Listing 12.04C for that matter, are his own testimony and reports, as well as that of a lay witness, concerning his symptoms. As noted above, however, symptoms alone will not justify a finding of equivalence, and the determination conducted at step three must be made only on the basis of medical factors. That being said, the medical evidence that is contained in the record further fails to establish that Listing 12.04B or Listing 12.04C have been met or equaled. No medical opinion source has found he has marked restriction of activities of daily living, marked difficulties in maintaining social functioning or marked difficulties in maintaining concentration, persistence, or pace, or has had repeated episodes of decompensation, each of extended duration. Nor does the medical evidence demonstrate the existence of the type of severe limitations set forth in Listing 12.04C. For the same reasons, any claims of equivalence fail here too.

C.    Listing 12.06

Listing 12.06 provides that:

12.06 Anxiety Related Disorders: In these disorders anxiety is either the predominant disturbance or it is experienced if the individual attempts to master symptoms; for example, confronting the dreaded object or situation in a phobic disorder or resisting the obsessions or compulsions in obsessive compulsive disorders.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A. Medically documented findings of at least one of the following:

1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:

a. Motor tension; or

b. Autonomic hyperactivity; or

c. Apprehensive expectation; or

d. Vigilance and scanning;

Or

2. A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

Or

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.06. While it is arguable that the record does contain medically documented evidence of at least one of the factors set forth in Listing 12.06A above, there is no medical evidence that the criteria of Listing 12.06B or Listing 12.06C have been met. Plaintiff points to no opinion, nor does the record contain any, from a physician or other medical source that he suffers from that level of restricted functioning due to his anxiety. Once more plaintiff points to the findings of Dr. Richardson, but, as discussed above, Dr. Richardson did not opine that he suffered from any specific work-related or mental functional limitations as a result of his anxiety disorder diagnosis. Accordingly, the ALJ here too was not remiss in failing to find plaintiff's anxiety met or equaled Listing 12.06.

D.    Impairments in Combination

Plaintiff argues that even if his impairments individually do not meet or equal Listing 1.04, Listing 12.04 or Listing 12.06, combined they equate to a disability. Again, though, plaintiff discusses no actual medical evidence to support his assertion here, merely relying on general assertions largely related to his own testimony and self-reports. As discussed above, the medical evidence in the record fails to support a finding of listing-level severity or equivalence for any of the above-noted listed impairments. That same dearth of evidence also dooms plaintiff's argument that in combination they do as well. Accordingly, the ALJ did not err in failing to make that finding.

1    E.    Chronic Pain Syndrome or Pain Disorder

2    Lastly, plaintiff cites to a definition of pain disorder gleaned from the Diagnostic and Statistical

3    Manual of Mental Disorders, fourth edition, text revision ("DSM-IV-TR"), arguing his symptoms which

4    stem from his impairments equate to the criteria therefor, and thus his pain disorder either individually or

5    in combination with his other impairments meet or equal the Listings.  Plaintiff, though, would have the

6    Court act as its own medical expert here.  However, just as the ALJ is ill-equipped to do so, the Court too

7    lacks the expertise with which to determine whether plaintiff's symptoms match or qualify him for the pain

8    disorder diagnosis set forth in the DSM-IV-TR.  In addition, while some of the medical opinion sources in

9    the record have diagnosed plaintiff with a pain disorder, it is not clear they based that diagnosis on what is

10   contained in the definition plaintiff provides.  Regardless of whether that was the case, furthermore, it is

11   entirely unclear which of the impairments contained in the Listings plaintiff would have the Court equate

12   that definition.  Accordingly, plaintiff's argument is without merit here as well.

13   IV.   The ALJ's Assessment of Plaintiff's Credibility

14   Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d

15   639, 642 (9th Cir. 1982).  The Court should not "second-guess" this credibility determination.  Allen, 749

16   F.2d at 580.  In addition, the Court may not reverse a credibility determination where that determination is

17   based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a

18   claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as

19   long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148

20   (9th Cir. 2001).

21   To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for

22   the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must

23   identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.;

24   Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is

25   malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."

26   Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. O'Donnell v.

27   Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

28   In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility

evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. Id.

The ALJ discounted plaintiff's credibility in part for the following reasons:

> Although the medical records document degenerative disc disease of the cervical spine which results in decreased cervical mobility, the objective evidence does not fully support the claimant's allegations of disabling pain. The claimant acknowledged an ability to lift 20 pounds when he filed his application for Social Security disability benefits in June 2004 (Exhibit 1E/2). At the time of his disability filing, he was also observed by Social Security field officer worker M. Wilson to be able to move his neck with no difficulty and saw no indication that the claimant was in pain (Exhibit 2E/3). The claimant participated in treatment at a pain management center in August 2004 and at discharge he was released to full-time work beginning August 27, 2004, at a light to medium level of exertion with lifting of 15 pounds frequently to a maximum of 30 pounds, sitting up to six hours of an eight-hour workday, and standing/walking up to six hours of an eight-hour workday (Exhibit 5F/1, 5).

Tr. 17. With respect to plaintiff's initial report that he could lift 20 pounds – indicating an ability to lift within the sedentary to light level of work activity – the undersigned agrees with the ALJ that this report is inconsistent with his allegation of total disability.

The undersigned also does not fault the ALJ for relying on the observation of the Social Security field officer worker's comments. Plaintiff argues the ALJ erred in doing so in light of the fact that the worker is not a medical expert, and that is not at all clear from the short statement provided as to what all of the circumstances were at the time of the observation. However, the ALJ may consider the observations of other third parties regarding a claimant's symptoms, or in this case lack thereof, and an ALJ's credibility determination may not be reversed where it is based on contradictory or ambiguous evidence. See Smolen, 80 F.3d at 1284; Allen, 749 F.2d at 579. Had this been the only evidence on which the ALJ had based his credibility determination, plaintiff might have a point. As discussed extensively herein, though, the ALJ provided plenty of clear and convincing reasons for not finding plaintiff fully credible.

The release to full-time work at a light level of work activity in late August 2004, furthermore, also was a valid basis on which to discount plaintiff's credibility. A determination that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). Along those lines, the ALJ also properly noted that the objective medical evidence in the record reveals the effect of plaintiff's right upper

extremity tremor was much less significant than alleged, and that there was no indication he was medically required to lie down during the day. See Tr. 17-18.

The ALJ also provided the following reasons for discounting plaintiff's credibility:

> Treatment records from Shane Dunaway, M.D., in 2006 reveal the claimant sought treatment for monitoring of his diabetes which was reported to be well-controlled in November 2006. He complained of fatigue and elevated heart rate which were associated with his history of anemia and interferon treatment. However, the claimant did not mention any specific difficulties in relation to his cervical spine condition or neck pain which was not controlled by prescribed Oxycodone. (Exhibits 8F and 9F/37-39). In January 2006, Dr. Dunaway reported the claimant's pain "seems to be well controlled on this regimen" (Exhibit 9F/38).
>
> The claimant's allegations of disability primarily due to constant pain are inconsistent with medical records which reveal he was doing better with the addition of morphine sulfate to his medication regimen in May 2006 which resulted in a significant decrease in his use of Oxycodone for breakthrough pain (Exhibit 9F/20). In August 2006, it was reported the claimant had further decreased his use of Oxycodone to twice daily rather that [sic] three times daily (Exhibit 9F/17). Recent medical records dated December 21, 2006, suggest the claimant's pain is adequately controlled on that medication regimen as Dr. Proano reported there was no reason to change the dosage or frequency of his long-acting narcotic medication (Exhibit 9F/14).

Tr. 17. These also are valid reasons for finding plaintiff not entirely credible, as the ALJ may discount a claimant's credibility on the basis of medical improvement. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

The ALJ further noted plaintiff's own statements as to what he believed he was capable of doing were inconsistent with his allegations of total disability. Specifically, the ALJ pointed out that in June 2004, while plaintiff reported "that he was not able to return to work as a maintenance worker, he believed he could work at a job which allowed him to alternate sitting, standing, and walking as needed, with no lifting over 10 to 15 pounds," and that in June 2005, Dr. Proano stated that plaintiff reported "trying to either find work or work in a self-employed fashion." Tr. 18. This too was a clear and convincing reason on which the ALJ could base his decision to discount plaintiff's credibility. see Smolen v. Chater, 80 F.3d at 1284 (ALJ may consider prior inconsistent statements concerning symptoms).

The ALJ may consider motivation and the issue of secondary gain in rejecting symptom testimony. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Here, the ALJ found:

> The evidence suggests some lack of motivation and effort on the part of the claimant. Dr. Proano reported that results of a pain evaluation performed in March 2003 were invalid due to non-cooperation on the part of the claimant (Exhibit 9F/1). A report

from David A. Murphy, M.D., reveals the claimant acknowledged his behavior was due to a "bad attitude" (Exhibit 5F/2). On physical capacities testing performed in August 2004, it was noted that grip strength testing was invalid because the claimant gave less than full effort on testing. In addition, it was reported the claimant's self-reported pain ratings were inconsistent with lack of demonstrated pain behavior at times. (Exhibit 5F/12).

Tr. 18. The undersigned finds that the substantial evidence in the record supports the ALJ's findings here, and thus that the ALJ properly discounted plaintiff's credibility in part on this basis. Plaintiff argues there is no indication in the record that his treatment providers had reason to disbelieve his stated level of pain and other reported symptoms. There is no requirement, however, that a claimant's medical sources must find a lack of motivation or secondary gain for the ALJ to do so. In any event, as noted above by the ALJ, there is evidence from those who have examined and tested plaintiff that he failed to give full effort, and, indeed, plaintiff himself admitted to such on at least one occasion. Further, Dr. Proano, who did treat him, commented on plaintiff's lack of cooperation as well.

Lastly, the ALJ discounted plaintiff for the following reasons:

The claimant's credibility regarding the extent of his pain is reduced by his report in June 2004, in which he acknowledged an ability to perform self-care activities and home tasks despite his pain (Exhibit 5F/25). . . .

The claimant's complaints of disabling pain are also inconsistent with his reports of motorcycle riding. He reported in August 2004 that his primary form of transportation is a motorcycle and reported he could ride the motorcycle for 30 to 45 minutes before needing a break (Exhibit 5F/18). The claimant testified at the hearing that he can ride his motorcycle one-half hour at one time before taking a 15 minute break and typically rides one to one and one-half hours, two to three times per month. He stated he travels at 65 miles per hour on the highway. In addition, he wears a helmet which can be expected to impose further stress on his cervical spine. The claimant's complaints of disabling pain also appear to be inconsistent with spouse Nancy Aiken's testimony at the hearing which indicates that while the claimant typically engages in only minimal activity, he is able to perform appliance repairs and home repairs. It also appears the claimant has understated the extent of his driving in light of the testimony of Mrs. Aiken that the claimant performs all the driving.

Tr. 18. To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284. Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7. The claimant need not be "utterly incapacitated" to be eligible for disability benefits, however, and "many home activities may not be easily transferable to a work environment." Id.

Plaintiff argues the activities the ALJ found he engaged in are fairly minimal, and do not reach the

level necessary to establish they are transferrable to a work setting or that he spends a substantial part of his day performing them. The undersigned agrees. Although plaintiff may have been able to do self-care and some home tasks despite his pain, the record shows they were not done at a level indicative of an ability to perform full-time work. See Tr. 86-89, 182, 188, 295-98. As for plaintiff's motorcycle riding, while the undersigned finds the ALJ is not completely wrong to question whether the ability to ride at highway speeds for 30 to 45 minutes at a time is not indicative of disabling pain, the fact that plaintiff apparently rode his motorcycle only two to three times a month also does not clearly show an ability to work full-time. Lastly, the record indicates that plaintiff performed appliance or home repairs perhaps one or two times for a limited period of time (Tr. 299), and that while he may have done all or most of the driving (Tr. 301-02), the record fails to indicate the amount of time he spent doing that task.

Accordingly, the undersigned finds the ALJ erred in discounting plaintiff's credibility based on his activities of daily living, including riding his motorcycle, driving and performing household repairs and other chores. Nevertheless, the fact that one or more of the reasons for discounting plaintiff's credibility was improper, does not render the ALJ's credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case. Tonapetyan, 242 F.3d at 1148. Thus, the undersigned finds that overall the ALJ's credibility determination was proper.

V.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-

related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

In this case, the ALJ assessed plaintiff with the following residual functional capacity:

> . . . [T]he claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently. He can stand and/or walk for about six hours of an eight-hour workday. He can sit for about six hours of an eight-hour workday. He must have the option to alternate between sitting and standing. He should only occasionally perform overhead work. He is limited to work which does not require constant fine manipulation. Due to pain and side effects of medications, he is limited to simple, one- to three-step work involving limited interaction with the public.

Tr. 16. Plaintiff argues the above assessment is not supported by substantial evidence, asserting the ALJ glossed over significant evidence in the record concerning his psychological and pain-related limitations, and their interplay with his physical impairments. Plaintiff also asserts the ALJ failed to give proper consideration to his pain and symptom testimony and reports. As discussed above, however, the ALJ properly evaluated the medical evidence in the record, and did not err in discounting plaintiff's credibility.

Plaintiff further argues that when properly credited, both his testimony and that of his wife establish that he requires frequent prolonged rest throughout the day and is taxed by simple household activities. As just noted, though, the ALJ properly discounted plaintiff's credibility. With respect to the testimony of his wife, lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite to the specific record, as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Lewis, 236 F.3d at 512. In addition, the ALJ may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

Here, the ALJ did not conduct a express evaluation of the credibility of plaintiff's wife. While it seems clear the ALJ did not fully credit her testimony, given his above assessment of plaintiff's residual functional capacity, he still was required to provide germane reasons for discounting it. Plaintiff, however, has not provided any specific argument on this issue. In addition, the undersigned finds any error on the part of the ALJ here to be harmless. Lay testimony may be discounted if it conflicts with the medical evidence in the record. Lewis, 236 F.3d at 511; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)

(proper for ALJ to discount lay testimony that conflicts with available medical evidence). As discussed above, that evidence does not support the limitations alleged by plaintiff and his wife. Also as discussed above, plaintiff himself properly was found to lack credibility on these issues. As such, the undersigned finds that remand to the Commissioner for further consideration of the testimony of plaintiff's wife would serve no useful purpose, as it would not change the outcome of this matter. See Stout, 454 F.3d at 1055 (error harmless if it is inconsequential to ALJ's ultimate nondisability determination).

Lastly, plaintiff argues the ALJ erred in failing to determine his ability to perform full-time work on a sustained or regular and continuing basis. Specifically, he asserts his testimony establishes he is unable to perform work-related activities on such a basis. The undersigned disagrees. Ordinarily, a claimant's residual functional capacity "is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing basis**," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184 *2 (emphasis in original). The residual functional capacity assessment itself "must include a discussion of the individual's abilities on that basis." Id.

The ALJ need not make a specific finding as to a claimant's ability to sustain employment, though – and such a finding may be subsumed within the residual functional capacity assessment itself – if there is nothing in the record to suggest the claimant was unable to perform work on a sustained basis. See Frank v. Barnhart, 326 F.3d 618, 621 (5th Cir. 2003) (rejecting argument that separate findings must be made on obtaining and maintaining job in every case, even cases in which claimant does not suggest there is any difference between issue of ability to work and ability to sustain work); see also Perez v. Barnhart, 415 F.3d 457 (5th Cir. 2005) (finding claimant had failed to offer any evidence that his condition waxed and waned in intensity such that his ability to maintain work was not adequately taken into account in ALJ's assessment of his residual functional capacity). Since the ALJ in this case properly discounted plaintiff's credibility, the ability to sustain work-related activity properly was subsumed within the ALJ's assessment of his residual functional capacity.

VI.    The ALJ's Step Five Findings

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), §

416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Embrey, 849 F.2d at 422 (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert which contained substantially the same limitations as the ALJ included in his assessment of plaintiff's residual functional capacity. Tr. 305. In response to that hypothetical question, the vocational expert testified that although plaintiff could not perform his past relevant work, there were other jobs he could perform. Tr. 306-07. Based on the vocational expert's response, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. Tr. 20-21. Plaintiff argues the hypothetical question the ALJ relied on to find him capable of performing such jobs was incomplete and inaccurate. The undersigned disagrees. Given that, as discussed above, the ALJ properly evaluated the medical evidence in the record and did not err in assessing plaintiff's credibility, the ALJ did not have to include any additional limitations in his assessment of plaintiff's residual functional capacity and, accordingly, in the hypothetical question he posed to the vocational expert.

Plaintiff argues that the additional limitations added to the ALJ's original hypothetical question at the hearing – i.e., an inability to persist for a full day of work or a full workweek resulting in losing two or more days of work per month, and a need to lie down for at least an hour in addition to regular breaks during a normal eight-hour workday (Tr. 307-08) – constituted a more complete description of his abilities. The medical evidence in the record, however, fails to support these limitations, and, once more, the ALJ was not required to adopt them to the extent they are based on plaintiff's own testimony or self-reports. As such, the ALJ properly determined not to adopt any of those limitations or rely on them in determining

plaintiff's ability to work at step five of the sequential disability evaluation process.  The same is true with respect to plaintiff's alleged inability to hold his head in a fixed position for extended periods of time due to his degenerative disc disease.

CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ properly concluded plaintiff was not disabled, and should affirm the ALJ's decision.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have ten (10) days from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **October 31, 2008**, as noted in the caption.

DATED this 8th day of October, 2008.

Karen L. Strombom
United States Magistrate Judge